Opinion of the Court, by
Ch. J. Muter.
IT is alleged by the counsel of the appellant, that the inferior court erred in not pronouncing a decree in favor of the complainant, either for the land in the bill mentioned, or that the bond which had been destroyed by the appellee should be set up, so that the appellant might pursue his remedy at law for his damages. The counsel for the appellee contended, that it does not appear from this record, that a bond was executed by the appellee; and from the whole complexion of the case, there was no consideration or inducement on the part of the appellee, to part with the land, other than mere voluntary courtesy, and, therefore, a specific execution ought not to be decreed in equity.
From the proofs in this cause, the following facts may be fairly deduced: That William Robinson, in the year 1785, gave an instrument of writing to Rene Leforce, the father of the appellant, obliging himself to make a good and lawful right to the said Rene Leforce for one hundred acres of land, out of the south end of his pre-emption: That in the year 1786, the said William Robinson, discovering the spring which he had pointed out at which the said Rene Leforce was to settle, was not within the bounds of his pre-emption survey, then proposed to give to the said Rene Leforce, one hundred acres within his pre-emption, lying on the other side of Boone’s creek, in lieu of the other land: That the said land was laid off, and the said Rene Leforce was put into possession thereof, who leased the same to two men by the names of Woods and M’Keefer, who cleared about twenty acres: That Robinson afterwards refused to convey the land to Rene Leforce; but promised that if the said Rene Leforce would deliver up the instrument of writing, that he, Robinson, would give the land to the appellant whenever he stood in need of it; upon which promise, the said Rene Leforce gave up the instrument of writing to the appellee, who destroyed it: That the appellant lived with his uncle, (the appellee,) who was an old bachelor, without children: That during part of this time, the appellee received the rents of the land; but repeatedly acknowledged, that the land belonged to the appellant; and in a deed which he *23 made to George Stephenson, called for one of the lines of the said land as the line of William Leforce: That these declarations had been so frequently made, and to different persons, that the land was reputed, in the neighborhood, to belong to William Leforce, who was in possession thereof so late as the year 1802. It is also in proof, that the appellant acknowledged that it depended on the will of his uncle, the appellee, whether he got the land; and the appellee at some times declared, that it depended on the good conduct of his nephew towards him, whether he gave it; also, that at different times, the nephew incurred his uncle’s displeasure; but he again appears to have been reconciled to him about the time of the commencement of this suit.
The acknowledgments of the appellee as to his right to the land, which depended upon a question of law, cannot affect it; for a party is not bound by an admission of a question of law, although he is by an admission of fact; and moreover, many of these facts happened during the infancy of the appellant, and, therefore, he cannot be presumed to have been acquainted with them, at least he might not have been when he made these acknowledgments. They, therefore, can have no influence on the cause.
It appears that it was a voluntary act in the appellee in the first instance, in giving an instrument in writing obliging himself to convey the one hundred acres of land to Rene Leforce, and it is possible, if the transaction had stopped there, he could not have been compelled to convey the land; but it is also possible, that Leforce might have recovered damages at law for its value, and be this as it may, Robinson having got possession of the writing, under a promise to do a particular act, and having destroyed it, he shall not be permitted to avail himself of any defect which he alleges to have been in the writing, and ought to be compelled to perform the promise upon which he obtained it; and more especially, when, from the subsequent transactions, Rene Leforce has improved the land as well as the appellant, by the labor which has been bestowed thereon, the appellee ought not to avail himself of the ameliorations which they were induced to bestow, under expectations that the subject was their own, which expectations were founded on and encouraged by the acts and repeated declarations of the appellee.
*24 But the conduct of the appellant towards the appellee, is assigned as the cause why the latter refuses to carry his voluntary contract (as it is alleged to be) into effect; and the marriage of the appellant contrary to the will of his uncle, who had determined to live in a state of celibacy himself, is seized on. It appears that the marriage took place in the latter end of the year 1795, or beginning of 1796; yet, in a will made by the appellee in the year 1802, he says, he devised eight acres of this land, which he then was in possession of, to the appellant. It appears a little strange, that if the marriage produced the displeasure, that five or six years after, he should make his will, and, by that, do the thing which he now refuses.
The decree of the inferior court is reversed, the cause remanded, and the inferior court directed to enter a decree in favor of the complainant for the land, and such decree as to rents and profits as shall appear equitable.